FILED
Clerk
District Court
JUL 07 2016
for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| KAYE CHRISTIAN, <br><br> Plaintiff, <br><br> v. <br><br> COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, COMMONWEALTH HEALTHCARE CORP., EUSEBIO MANGLONA, DR. FRANCOIS CLAASSENS, and DOES 1–10, <br><br> Defendants. | Case No. 1:14-CV-00010 <br><br> DECISION AND ORDER DENYING THE COMMONWEALTH'S MOTION TO SUBSTITUTE |

## I. INTRODUCTION

When an employee of the Commonwealth of the Northern Mariana Islands ("CNMI" or "Commonwealth") commits a negligent act within the scope of his office or employment, the Commonwealth waives its immunity to suit—with certain exceptions and limitations—to the injured plaintiff. *See* 7 CMC [N. Mar. I. Code] § 2202(a). However, because the Commonwealth routinely fails to pay judgments entered against it and caps damages at $200,000, plaintiffs sometimes bring suit against a CNMI employee in his individual—and therefore unlimited—capacity, even when the employee was acting within the scope of his official authority. *Id*. To sidestep such cases and the resulting expense of defending multiple employees in the same lawsuit, the legislature passed the Commonwealth Employees' Liability Reform and Tort Compensation Act of 2006 ("Reform Act"), which allows the CNMI to be substituted in place of

its employees in individual capacity lawsuits upon certification of the Attorney General ("AG") that the employee was acting within the scope of his office or employment. 7 CMC § 2210(a); *see* Pub. L. 15-22 § 2 Findings and Purpose, July 28, 2006. However, the Reform Act is not the exclusive remedy for causes of action created by other statutes. 7 CMC § 2208(b)(2)(B). In other words, if another statute creates a private right of action, then the plaintiff suing to enforce that statute is not bound by the Reform Act.

In the present action, the Commonwealth of the Northern Mariana Islands ("Commonwealth" or "CNMI") seeks to substitute itself in the place of Defendants Eusebio Manglona and Francois Claassens in their individual capacities as to Claims 7 through 9 of the Second Amended Complaint for alleged violations of the Involuntary Civil Commitment Act and the Patient's Rights Act. (Notice of Substitution, ECF No. 60.) Plaintiff Kaye Christian opposes the substitution and argues that both statutes create a private cause of action. (Opp'n to Substitution, ECF No. 61; Opp'n to Certification of Scope of Employment, ECF No. 62.) The Court agrees with Christian. Because the Involuntary Civil Commitment Act and the Patient's Rights Act each create a private right of action, the Reform Act does not provide the exclusive remedy for Christian's alleged harms, and the Commonwealth's motion to substitute must be denied.

## II. BACKGROUND

It is not necessary to recount this case's lengthy procedural history here. Suffice to say, Christian sued Manglona and Claassens for their role in her involuntary civil detention from December 31, 2013 through January 3, 2014. (Second Amended Complaint ("SAC"), ECF No. 28.) Broadly, Christian alleges that Manglona seized her from her home without cause and brought her to the Rota Health Center, where Claassens, the resident physician, improperly

ordered her to be detained for a mental health evaluation. The Commonwealth seeks to substitute itself for Manglona and Claassens for Claims 7 through 9 pursuant to the Reform Act.

Christian specifically asserts causes of action pursuant to the Involuntary Civil Commitment Act and the Patient's Rights Act. In Claim 7, Christian seeks damages from Claassens because he allegedly "illegally detained plaintiff in violation of her rights under the Involuntary Civil Commitment Act, 3 CMC § 2501 et seq., by involuntarily detaining plaintiff when she was not a danger to herself or others and there was no recent overt act within the prior 24 hours that plaintiff was a danger to herself or others." (SAC ¶ 95.) In Claim 8, Christian asserts that Manglona and Claassens are liable for damages because they allegedly "chemically restrain[ed] plaintiff [and] deprived plaintiff of her right to be free from chemical restraint [as] protected by the Patient's Rights Act, 3 CMC § 2558." (SAC ¶ 104.) In Claim 9, Christian seeks damages against Manglona for allegedly "handcuffing plaintiff to the bed at the Rota Health Center and holding plaintiff down while defendant Claassens administered shots[,] depriv[ing] plaintiff of her right to be free from physical restrained [as] protected by the Patient's Rights Act, 3 CMC § 2558." (SAC ¶ 106.)

### III.   DISCUSSION

This matter requires the Court to consider and construe Commonwealth statutes according to the rules of statutory construction as used by the Commonwealth Supreme Court. *See Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002) (noting that if a particular issue of state law has not been decided by the state's highest court, "federal courts must predict how the state's highest court would resolve it"). Accordingly, the court must give the statutory language "its plain meaning, where the meaning is clear and unambiguous." *Saipan Achugao Resort Members' Ass'n v. Yoon*, 2011 MP 12 ¶ 23 (internal quotation marks omitted). "When a

statute is not clear, however, we look at the statute as a whole, not just an isolated set of words, to ascertain the legislature's intent . . . and likewise avoid reading a statute in a way that defies common sense or leads to absurd results." *Aurelio v. Camacho*, 2012 MP 21 ¶ 15. Of course, a court's "principal responsibility in statutory construction is not judicial speculation, but to give effect to the authors' intent." *Commonwealth of Northern Mariana Islands v. Saburo*, 2002 MP 3 ¶ 12 (citing *Gorin v. United States*, 11 F.2d 712 (9th Cir. 1940)). To help ascertain the legislative intent, courts also consider chapter and subchapter headings in statutes. *See Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008) ("a subchapter heading cannot substitute for the operative text of the statute," but "statutory titles and section headings are tools available for the resolution of a doubt about the meaning of a statute") (internal quotation marks omitted); *cf. Valerio-Ochoa v. I.N.S.*, 241 F.3d 1092, 1096 (9th Cir. 2001) ("the subsection title 'Certain Firearms Offenses' belies the contention that firearms offenses are not embraced within its coverage").

With these principles in mind, the Court begins its interpretive task.

*A.  The Commonwealth may not substitute itself for its employees if the statute under which they are sued creates a private right of action.*

The Commonwealth seeks to substitute itself for Manglona and Claassens pursuant to the Government Liability Act of 1983, as modified by the Reform Act. *See* 3 CMC [N. Mar. I. Code] § 2201 et seq. The Government Liability Act makes the Commonwealth "liable in tort for damages arising from the negligent acts of employees of the Commonwealth acting within the scope of their office or employment." 7 CMC § 2202(a). When an employee of the Commonwealth is sued in his individual capacity, the Reform Act allows the Commonwealth to be substituted in place of the employee if he was acting within the scope of his official duties:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his/her office or employment at the time of the incident out of which the claim arose, *any civil action or proceeding commenced upon such claim in a court against an employee shall be deemed an action against the Commonwealth and the Commonwealth shall be substituted as the party defendant*, if the Commonwealth was not already a defendant in the suit. An order dismissing the employee from the suit shall be entered.

7 CMC § 2210(a) (emphasis added).

The Reform Act makes the Government Liability Act the exclusive means by which claims may be brought against the Commonwealth, with several exceptions:

> (1) The remedy against the Commonwealth provided for by this Title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Commonwealth while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages, by reason of the same subject matter, against the employee whose act or omission gave rise to the claim, or against the estate of such employee. *Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.*
>
> (2) Paragraph (1) *does not extend to or apply to a civil action against an employee of the Commonwealth which*:
> 
>     (A) Is brought for a violation of the Constitution(s) of the United States or the Commonwealth, or
>     (B) *Is brought for a violation of a statute of the Commonwealth or the United States under which such action against an individual is otherwise authorized.*

7 CMC § 2208(b) (emphasis added).

The construction is relatively straightforward and unambiguous. Under section 2208(b)(1), the remedy against the Commonwealth for negligent employee acts is *exclusive* of other actions for relief, which are precluded. 7 CMC § 2208(b)(1).[1] In other words, suits against

---

[1] The reference to "this Title" in paragraph (b)(1) is likely an error attributable to the Reform Act's basis in the federal Westfall Act, which has nearly identical language. 28 U.S.C. § 2679(b)(1) ("The remedy against the United States provided by sections 1346(b) and 2672 of this *title* for injury . . . ") (emphasis added). The Court does not construe section 2208(b)(2)'s exception to paragraph (b)(1) as rendering all of Title 7 of the Commonwealth Code inapplicable. Like the Westfall Act, which references the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b),

5

Commonwealth employees must be brought under the Government Liability Act, 7 CMC § 2208(b)(1), and if a lawsuit should have been brought against the Commonwealth because the employee was acting within the scope of his official duties, then the employee must be substituted upon the AG's certification. *See* 7 CMC § 2210(a). However, constitutional claims and claims based on a statute that creates a private cause of action are not precluded by the Reform Act, which means that this substitution pursuant to that Act would be improper.[2]

Therefore, if the Involuntary Civil Commitment Act and the Patient's Rights Act establish a private right of action, substitution is improper and must be denied regardless of whether Manglona and Claassens were acting in an official capacity.[3]

*B. The Involuntary Civil Commitment Act and the Patient's Rights Act establish a private right of action.*

The Involuntary Civil Commitment Act and the Patient's Rights Act unambiguously create private rights of action. For instance, in a section titled "Right to Counsel; Private Right of Action," the Involuntary Civil Commitment Act provides that "[a]ny aggrieved person may seek to enforce the rights, obligations, and liabilities under this article." 3 CMC § 2519(b). Similarly, in a section titled "Grievances, Private Right of Action," the Patient's Rights Act provides that "[a]n aggrieved person may enforce the rights, obligations and liabilities of this article." 3 CMC § 2563(b). Those provisions manifest the legislature's intent to authorize actions against anyone violating the law, including individuals. *See Westinghouse Elec. Corp. v. Pacific Gas & Elec. Co.*, 326 F.2d 575, 580 (9th Cir. 1964) (stating that "[r]emedial statutes should be liberally construed and should be interpreted (when that is possible) in a manner tending to discourage

---

the Court interprets the Reform Act as simply applying the FTCA's Commonwealth counterpart, the Commonwealth Liability Act.

[2] This is likely why the Commonwealth did not move to substitute itself for Manglona and Claassens on Christian's constitutional claims.

[3] For purposes of this motion, the Court assumes without deciding that Claassens' employer, Commonwealth Healthcare Corporation, is an arm of the Commonwealth itself.

attempted evasions by wrongdoers") (citations omitted).

The Commonwealth argues that the statutes should be read at most as creating a "cause of action for declaratory and/or injunctive relief against the Commonwealth Health Center and its officials." (Reply 8, ECF No. 65.) In support of its argument, the Commonwealth contends that the statutes are ambiguous because they could conceivably apply to "official capacity defendants, and/or personal capacity defendants, and/or governmental entities charged with execution of the statutes, singly and/or collectively." (Reply 5.) Moreover, they do not expressly mention damages, unlike another provision of the Patient's Rights Act, 3 CMC § 2562. (Reply 5–6, 8.) Finally, the Commonwealth argues that the Acts do not necessarily create damages provisions. (Reply 5.) The Court is not persuaded.

The Court agrees that the statutes in question do not expressly indicate who can be sued in what capacity, but disagrees as to the implication to be drawn. As the Commonwealth correctly notes, section 2562 provides a very specific cause of action "against an individual or agency who has willfully and knowingly released confidential information." 3 CMC § 2562(a). But the Court views the particularity of section 2562 as a special exception to the more general cause of action in section 2563, rather than as creating a requirement that every provision be as specific as section 2562. *See Aurelio v. Camacho*, 2012 MP 21 ¶ 15 (emphasizing common sense). If the Commonwealth's interpretation were to win the day, then either the Court would have to artificially limit the reach of section 2563 (and by extension 2519) or find that it creates no cause of action at all—a result at odds with general statutory construction. *Bilski v. Kappos*, 561 U.S. 593, 607–08 (2010) (noting generally the "canon against interpreting any statutory provision in a manner that would render another provision superfluous"). The Court finds that the most natural reading of section 2563 creates a cause of action against any bad actor violating

a right safeguarded by the Act. In other words, the legislature did not (and need not) specify which persons may be sued if it intends the protections of the Acts to apply against any violator.

By the same reasoning, the Court rejects the Commonwealth's argument about the absence of express monetary damages in either Act. Again, the Court is aware that section 2562 specifically creates monetary liability for violations of its provisions, but that particularity cannot doom section 2563 without running afoul of the canon against rendering statutory provisions superfluous. *See* 3 CMC § 2562(a) (limiting damages to $2,500 or treble actual damages). Moreover, both Acts refer to enforcing the "liabilities" of the article, which suggests monetary damages. 3 CMC §§ 2519(b), 2563(b); *cf. Ramirez v. MGM Mirage, Inc.*, 524 F.Supp.2d 1226, 1236 (D. Nev. 2007) (distinguishing between using the term "liability" to refer to damages rather than injunctive relief in a statute with express damage amounts listed) (quotation marks omitted).

The Commonwealth also relies on *Alexander v. Sandoval* for the proposition that private rights of action must be explicit and unambiguous. (Reply 6.) Because that case deals with an *implied* private cause of action, rather than an express cause of action, as here, it is not on point. 532 U.S. 275, 287 (2001) (noting that the Court no longer implies private rights of action without Congress creating them). Even if *Alexander* were on point, it actually bolsters the Court's ruling that a private right of action exists. *Id.* at 290 ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."). Here, the Commonwealth legislature did the opposite: they created a broad remedy without specific limitations to preclude relief. The legislature intended for individuals like Christian to be able to attempt to obtain monetary—as well as injunctive—relief against individuals.

## IV.   CONCLUSION

Because the Involuntary Civil Commitment Act and the Patient's Rights Act create

private rights of action, and the Reform Act is not the exclusive means of enforcing private rights of action against individuals, the Commonwealth cannot substitute itself for Manglona and Claassens, and the motion to substitute is denied.

SO ORDERED this 7th day of July, 2016.

_____
RAMONA V. MANGLONA
Chief Judge